IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>  Plaintiff,<br><br> v.<br><br>INNOVATIVE WIRELESS SOLUTIONS, LLC,<br><br>  Defendant. | Civil Action No. 1:13-cv-00492<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DECLARATORY JUDGMENT

  Plaintiff Cisco Systems, Inc. ("Cisco") files this Complaint for Declaratory Judgment ("Complaint") against Defendant Innovative Wireless Solutions, LLC ("IWS"). Cisco seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, declaring United States Patent Nos. 5,912,895 (the "'895 Patent"), 6,327,264 (the "'264 Patent") and 6,587,473 (the "'473 Patent") (collectively the "patents-in-suit") to be not infringed and to be invalid.

## PARTIES

  1. Plaintiff Cisco is a California corporation with its principal place of business on Tasman Dr. in San Jose, California 95134.

  2. IWS is a Texas Limited Liability Company with a purported principal place of business at 800 S. Austin Avenue, Suite 200, Georgetown, TX 78626-5848. IWS also has a registered agent, BlumbergExcelsior Corporate Services, Inc., located at 814 San Jacinto Boulevard, Suite 303, Austin, Texas 78701. *See* Franchise Tax Account Status on file with the Texas Office of the Comptroller, attached as Exhibit "A;" *see also* Records from the Texas

Secretary of State, attached as Exhibit "B." On information and belief, IWS is a shell entity that has been organized, in part, to hide the identity of the individuals and/or entities who control and are participating in, and/or obtaining benefit from, the activities of IWS and to make it more difficult to determine the appropriate venue for any case in which IWS is involved.

## BACKGROUND STATEMENT

3. Cisco brings this declaratory judgment action to protect the purchasers of Cisco's products from the most recent recurring plague on this country's patent system. IWS is a patent assertion entity that, on information and belief, has been set up to monetize patents by filing strike suits against mere end users of 802.11 standard compliant products (also known as Wi-Fi products) for the purpose of obtaining licensing and settlement amounts to which they are not entitled. As explained in detail herein, rather than seek to license its patents to Cisco and other manufactures of Wi-Fi compliant products, IWS instead sent demand letters to end users that have purchased Cisco products that are compliant with the Wi-Fi standards. Within one week of sending the letters, IWS filed 41 lawsuits against these end users of Cisco products and other similar parties. In turn, Cisco received indemnity demands from a number of these purchasers.

4. On information and belief, IWS is pursuing a litigation strategy of suing retail purchasers, as opposed to the actual manufacturers of the standard compliant Wi-Fi products (*e.g.*, Cisco), in order to leverage the cost of litigation against targets that do not have the resources, inclination or technical knowledge about the products or standards necessary to defend against IWS's allegations. On information and belief, IWS is targeting this class of users in order to obtain licenses and settlements that bear no reasonable relation to the value, if any, or scope of the patents-in-suit.

5.      Although the 41 lawsuits were dismissed <u>without prejudice</u> on June 7 and June 10, 2013, on information and belief, IWS is intent on re-filing these lawsuits against these retail purchasers after correcting one or more procedural deficiencies.

6.      IWS's infringement allegations are not purchaser-specific and, instead, are directed at the design and operation of the accused 802.11 standard compliant Wi-Fi products offered by Cisco and others.  In the letters sent by IWS from its offices in this judicial district, IWS alleges infringement based on the accused infringers' purchase and use of the Wi-Fi products. *See* Letters dated April 10, 2013 from IWS, copies of which are attached as Exhibit "C." Notably, these letters reflect a "copy and paste" strategy pursuant to which all the purchasers are accused of the identical acts of infringement based on a generic purchase and use theory.

7.      As evidenced by the recent editorial in the New York Times authored, in part, by Chief Judge Rader of the United States Court of Appeals for the Federal Circuit, IWS's litigation tactics of pursuing claims against end purchasers, rather than product suppliers, if allowed to go forward, would be an improper use of the U.S. Federal Court system and an undue burden on the Courts and the business community.  As Judge Rader states:

> The onslaught of litigation brought by "patent trolls" — who typically buy up a slew of patents, then sue anyone and everyone who might be using or selling the claimed inventions — has slowed the development of new products, increased costs for businesses and consumers, and clogged our judicial system.
>
> Their business plan is simple: trolls (intellectual-property lawyers use less evocative terms like "non-practicing entities" and "patent-assertion entities") make money by threatening companies with expensive lawsuits and then using that cudgel, rather than the merits of a case, to extract a financial settlement. In the apt summary of President Obama, who on Tuesday announced a plan to stave off frivolous patent litigation, trolls just want to "hijack somebody else's idea and see if they can extort some money."

\* \* \*

> In the meantime, vexatious patent litigation continues to grind through our already crowded courts, costing defendants and taxpayers tens of billions of dollars each year and delaying justice for those who legitimately need a fair hearing of their claims. Trolls, in fact, filed the majority of the roughly 4,700 patent suits in 2012 — and many of those were against small companies and start-ups that often can't afford to fight back.

\* \* \*

8. Accordingly, Cisco brings this Declaratory Judgment action because it already has received indemnity demands from purchasers of its products because of IWS's claims and has the expectation of receiving additional indemnity demands. *See Arris Group, Inc. v. British Telecomms. PLC*, 639 F.3d 1368 (Fed. Cir. 2011).

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over Cisco's request for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., which are within the subject matter jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1338(a).

10. IWS's threat letters and the cases it filed allege infringement of the patents-in-suit by, among others, the purchasers of Cisco's wireless routers or access points that comply with certain amendments of the IEEE 802.11 standard. In turn, these purchasers made indemnity demands to Cisco. Thus, the allegations made by IWS in its various filed cases and in its threat letters give rise to an actual and justiciable controversy between Cisco and IWS as to the noninfringement and invalidity of the patents-in-suit.

11. IWS's lawsuits and infringement allegations threaten actual and imminent injury to Cisco that can be redressed by judicial relief and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Absent a declaration of

noninfringement and/or invalidity, IWS's continued wrongful assertions of infringement related to the use of Cisco's products will cause Cisco harm.

12. IWS is subject to general and specific personal jurisdiction in this judicial district based upon its purposeful, systematic, and continuous contacts with Texas, including forming under the laws of Texas, maintaining an address in and sending threat letters from this judicial district and maintaining a registered agent in this judicial district.

13. Venue is proper in this Court under 28 U.S.C. § 1391 because IWS resides in this judicial district and, as described below, a substantial part of the events giving rise to the claims at issue occurred in this judicial district and because IWS is subject to personal jurisdiction within this judicial district.

## FACTUAL BACKGROUND

14. Cisco is a worldwide leader in the development of networking equipment including wireless routers and access points. Cisco's wireless routers and access points are purchased by various enterprises, including hotels and coffee shops, which in turn offer Wi-Fi, or wireless Internet service, to their customers or use it internally in their businesses.

15. Among the wireless routers and access points sold by Cisco are routers and access points that are compliant with the IEEE 802.11 standard.

16. Upon information and belief, IWS is a non-practicing entity organized for the specific purpose of pursing infringement lawsuits and improperly shielding the real parties in interest from exposure and liability associated with the lawsuits, such as may result from an imposition of costs or attorneys' fees that may be obtained by the defendants in the lawsuits, and/or to hide prior actions of, or obligations that might be owed by, the real parties in interest. IWS does not commercialize any products or services embodying the patents-in-suit.

17. IWS purports to be the owner of the '895 Patent. The '895 Patent is entitled "Information network access apparatus and methods for communicating information packets via telephone lines" and issued on June 15, 1999. A copy of the '895 Patent is attached as Exhibit "D."

18. IWS purports to be the owner of the '264 Patent. The '264 Patent is entitled "Information network access apparatus and methods for communicating information packets via telephone lines" and issued on December 4, 2001. A copy of the '264 Patent is attached as Exhibit "E."

19. IWS purports to be the owner of the '473 Patent. The '473 Patent is entitled "Information network access apparatus and methods for communicating information packets via telephone lines" and issued on July 1, 2003. A copy of the '473 Patent is attached as Exhibit "F."

20. IWS's ownership claims appear to flow from a series of recent assignments from multiple limited liability companies, allegedly culminating with an assignment by Generation Wireless Solutions LLC to IWS on March 5, 2013, *i.e.*, less than two months before IWS filed suit against purchasers of Cisco's products. A copy of the assignment records available on the USPTO's website is attached as Exhibit "G."

21. IWS is represented by Farney Daniels PC, a law firm located in Georgetown, Texas. Attorneys associated with Farney Daniels are listed as correspondents on the Patent Assignment Abstracts of Title for the patents-in-suit. Upon information and belief, Farney Daniels represented IWS in connection with the assignment of the patents-in-suit to IWS. On information and belief, in addition to representing non-practicing entities, the Farney Daniels law

firm and/or at least one of its principals and/or that principal's relatives own or control other non-practicing entities that currently are suing Cisco and various other entities.

22. IWS's filings with the Texas Secretary of State and other records on file with the Texas Office of the Comptroller all show that IWS's actual place of business is the same address from which the assignment of the patents-in-suit was negotiated and from which its demand letters were sent in April, 2013, *i.e*,. 800 S. Austin Avenue, Suite 200, Georgetown, TX 78626-5848.  This also is the address for the Farney Daniels law firm in Georgetown, TX.  Because IWS has concealed the identity of the real parties in interest involved in its licensing and litigation business, Cisco is unable to determine whether the Farney Daniels law firm is a real party in interest behind IWS.

23. Although IWS alleged in its recently dismissed lawsuits that its place of business is 555 Republic Drive, Suite 200, Plano Texas 75074, this is a sham address and contradicted by IWS's filings with the State of Texas.  Upon information and belief, IWS has alleged a place of business at 555 Republic Drive, Suite 200, Plano Texas 75074 solely for the purpose of fraudulently generating venue in the Eastern District of Texas.

24. IWS's name does not appear anywhere at 555 Republic Drive, Plano Texas 75074 and, based on Cisco's investigation, IWS does not maintain a permanent presence at 555 Republic Drive, Suite 200, Plano Texas 75074.

25. On April 24, 2013, IWS commenced 41 patent infringement suits against various defendants in the Eastern District of Texas, alleging infringement of one or more of the patents-in-suit.

26. IWS sued, among others, entities that purchased Cisco wireless routers or access points.

27.   The Complaints filed by IWS all make similar allegations, alleging infringement based upon defendants' alleged conduct related to making, using, offering to sell, and selling the use of components in an IEEE 802.11 wireless network.  *See e.g.*, Complaint filed in *Innovative Wireless Solutions, LLC v. Boundless Enterprises, LLC*, Case No. 2:13-CV-344 (E.D. Tex.); Complaint filed in *Innovative Wireless Solutions LLC v. La Quinta Inn Worldwide LLC et al*, Case No. 2:13-CV-342 (E.D. Tex.); Complaint filed in *Innovative Wireless Solutions, LLC v. Starbucks Corporation*, Case No. 2:13:cv0039 (E.D. TX); Complaint filed in *Innovative Wireless Solutions, LLC v. Heritage Inn Number 7, LP, et al*, Case No.13:cv-00343 (E.D. TX).  Copies of the Complaints without exhibits filed in these actions are attached as Exhibits "H"-"K" respectively.

28.   IWS dismissed each of the lawsuits it filed without prejudice and, upon information and belief, is intent on re-filing those lawsuits against, among others, purchasers of Cisco's products.

29.   Immediately prior to initiating these lawsuits, IWS sent demand letters to the parties it sued (not all of which are purchasers of Cisco products).  The demand letters are virtually identical, alleging infringement of the patents-in-suit based upon the use and operation of the accused parties' "802.11 wireless networks."  *See e.g.*, Letters dated April 10, 2013 from IWS, copies of which are attached as Exhibit "C."

30.   The return address for the letters sent by IWS is IWS's business address at 800 S. Austin Ave., Suite 200, Georgetown, Texas 78626.  Additionally, the postage mark indicates that the letters were mailed from zip code 78626 – the zip code for Georgetown, Texas.  *See* Exhibit "C."  The letters were signed by Paul Heath, who is a member of Auctus Capital Investments, LLC, which claims to be the manager for IWS.

31. For the parties that IWS sued or threatened with suit and that purchased Cisco wireless routers or access points, access to those parties' 802.11 wireless networks may be facilitated, in whole or in part, by a wireless router or access point sold by Cisco.

32. Some of the parties sued by IWS have demanded that Cisco, as the manufacturer of wireless routers or access points used by those parties, defend and indemnify them against IWS's infringement claims. *See e.g.* Letter dated June 5, 2013, to Jack B. Blumenfeld, a copy of which is attached as Exhibit "L." These parties contend that Cisco is obligated to defend and indemnify them pursuant to the terms of their agreements with Cisco.

## COUNT I
### Declaratory Judgment of NonInfringement of the '895 Patent

33. Cisco incorporates the foregoing paragraphs by reference as though set forth fully herein.

34. No claim of the '895 Patent has been or is infringed, either directly or indirectly, by Cisco or the purchasers of Cisco's products through their use of Cisco products.

35. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between IWS and Cisco to warrant the issuance of a declaratory judgment that Cisco has not infringed, and does not infringe, directly or indirectly, any valid claim of the '895 Patent.

## COUNT II
### Declaratory Judgment of Invalidity of the '895 Patent

36. Cisco incorporates the foregoing paragraphs by reference as though set forth fully herein.

37. The claims of the '895 Patent are invalid for failure to comply with the requirements of patentability as specified in 35 U.S.C. §§ 1 et seq., including, without limitation,

35 U.S.C. §§ 102, 103, and/or 112, and/or based on other judicially-created bases for invalidation.

38. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between IWS and Cisco to warrant the issuance of a declaratory judgment that the claims of the '895 Patent are invalid.

## COUNT III
### Declaratory Judgment of NonInfringement of the '264 Patent

39. Cisco incorporates the foregoing paragraphs by reference as though set forth fully herein.

40. No claim of the '264 Patent has been or is infringed, either directly or indirectly, by Cisco or the purchasers of Cisco's products through their use of Cisco products.

41. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between IWS and Cisco to warrant the issuance of a declaratory judgment that Cisco has not infringed, and does not infringe, directly or indirectly, any valid claim of the '264 Patent.

## COUNT IV
### Declaratory Judgment of Invalidity of the '264 Patent

42. Cisco incorporates the foregoing paragraphs by reference as though set forth fully herein.

43. The claims of the '264 Patent are invalid for failure to comply with the requirements of patentability as specified in 35 U.S.C. §§ 1 et seq., including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112, and/or based on other judicially-created bases for invalidation.

44.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between IWS and Cisco to warrant the issuance of a declaratory judgment that the claims of the '264 Patent are invalid.

## COUNT V
### Declaratory Judgment of NonInfringement of the '473 Patent

45.     Cisco incorporates the foregoing paragraphs by reference as though set forth fully herein.

46.     No claim of the '473 Patent has been or is infringed, either directly or indirectly, by Cisco or the purchasers of Cisco's products through their use of Cisco products.

47.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between IWS and Cisco to warrant the issuance of a declaratory judgment that Cisco has not infringed, and does not infringe, directly or indirectly, any valid claim of the '473 Patent.

## COUNT VI
### Declaratory Judgment of Invalidity of the '473 Patent

48.     Cisco incorporates the foregoing paragraphs by reference as though set forth fully herein.

49.     The claims of the '473 Patent are invalid for failure to comply with the requirements of patentability as specified in 35 U.S.C. §§ 1 et seq., including, without limitation, 35 U.S.C. §§ 102, 103, and/or 112, and/or based on other judicially-created bases for invalidation.

50.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality between IWS and Cisco to warrant the issuance of a declaratory judgment that the claims of the '473 Patent are invalid.

## PRAYERS FOR RELIEF

WHEREFORE, Cisco prays for:

(a)     A declaration that Cisco and the purchasers of Cisco's products have not infringed and are not infringing, either directly or indirectly, any claim of the '895, '264, and '473 Patents;

(b)     A declaration that each claim of the '895, '264, and '473 Patents are invalid;

(c)     An order that IWS and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are restrained and enjoined from further prosecuting or instituting any action against Cisco or the purchasers of Cisco's products claiming that the '895, '264, and '473 Patents are infringed or from representing that Cisco's products or their use in the networks operated by the purchasers of those products infringe the '895, '264, and '473 Patents;

(d)     A declaration that this is an exceptional case under 35 U.S.C. § 285;

(d)     An award to Cisco of its costs and attorneys' fees;

(e)     Such other relief as this Court or a jury may deem proper and just under the circumstances.

## JURY DEMAND

Cisco demands a trial by jury on all issues so triable.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 12, 2013 | /s/ *David H. Harper*<br>David H. Harper<br>Texas State Bar No. 09025540<br>david.harper@haynesboone.com<br>HAYNES AND BOONE, LLP<br>2323 Victory Avenue, Suite 700<br>Dallas, Texas 75219<br>Tel: 214-651-5000<br>Fax: 214-651-5940 |
| *Of Counsel (Applications for Pro Hac Admission Pending)*: | Adam H. Sencenbaugh<br>Texas State Bar No. 24060584<br>adam.sencenbaugh@haynesboone.com<br>HAYNES AND BOONE, LLP<br>600 Congress Avenue, Suite 1300<br>Austin, Texas 78701<br>Tel: 512-867-8400<br>Fax: 512-867-8470 |
| Woody Jameson<br>wjameson@duanemorris.com<br>Matthew S. Yungwirth<br>msyungwirth@duanemorris.com<br>DUANE MORRIS LLP<br>Suite 2000<br>1075 Peachtree Street NE<br>Atlanta, GA 30309<br>Tel: 404-253-6900<br>Fax: 404-253-6901 |  |
| Jeffrey S. Pollack<br>jspollack@duanemorris.com<br>DUANE MORRIS LLP<br>30 South 17th Street<br>Philadelphia, PA 19103<br>Tel: 215-979-1000<br>Fax: 215-979-1020 |  |
| Diana M. Sangalli<br>dmsangalli@duanemorris.com<br>DUANE MORRIS LLP<br>1330 Post Oak Boulevard, Suite 800<br>Houston, TX 77056<br>Tel: 713-402-3900<br>Fax: 713-402-3901 |  |