```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                        AUSTIN DIVISION

 3   CISCO SYSTEMS, INC.                 ) AU:13-CV-00492-LY
                                         )
 4   VS.                                 ) AUSTIN, TEXAS
                                         )
 5   INNOVATIVE WIRELESS SOLUTIONS, LLC, )
     INNOVATIVE WIRELESS SOLUTIONS, LLC, )
 6   CISCO SYSTEMS, INC.                 ) AUGUST 28, 2013
     _____
 7
     RUCKUS WIRELESS, INC.               ) AU:13-CV-00504-LY
 8                                       )
     VS.                                 ) AUSTIN, TEXAS
 9                                       )
     INNOVATIVE WIRELESS SOLUTIONS, LLC  ) AUGUST 28, 2013
10

11        ************************************************
              TRANSCRIPT OF INITIAL PRETRIAL CONFERENCE
12
                  BEFORE THE HONORABLE LEE YEAKEL
13        ************************************************

14   FOR THE PLAINTIFF:        MATTHEW S. YUNGWIRTH
                               DUANE MORRIS LLP
15                             1075 PEACHTREE ST NE, SUITE 2000
                               ATLANTA, GEORGIA 30309
16
                               ADAM HUGH SENCENBAUGH
17                             HAYNES AND BOONE LLP
                               112 E. PECAN STREET, SUITE 1200
18                             SAN ANTONIO, TEXAS 78205

19   FOR THE DEFENDANT:        STEPHANIE R. WOOD
                               FARNEY DANIELS P.C.
20                             800 S. AUSTIN AVE.
                               GEORGETOWN, TEXAS 78626
21
     COURT REPORTER:           ARLINDA RODRIGUEZ, CSR
22                             501 WEST 5TH STREET, SUITE 4152
                               AUSTIN, TEXAS 78701
23                             (512) 391-8791

24   Proceedings recorded by computerized stenography, transcript

25   produced by computer.
```

14:29:00  1       (Open Court)

14:29:00  2            THE COURT:  I scheduled two cases for this afternoon

14:29:03  3  for what I call an initial pretrial conference.  The first is

14:29:09  4  Cause Number 13-CV-492, *Cisco Systems, Inc. v. Innovative*

14:29:21  5  *Wireless Solutions,* and the second, 13-CV-504, *Ruckus Wireless,*

14:29:37  6  *Inc. v. Innovative Wireless Solutions*.

14:29:37  7            So let me get announcements first as to who's here.

14:29:37  8  Just start to my right.

14:29:37  9            MR. YUNGWIRTH:  Yes, Your Honor.  Matt Yungwirth,

14:29:39  10  here today on behalf of Cisco Systems, Inc. and Ruckus

14:29:43  11  Wireless.

14:29:43  12            MR. SENCENBAUGH:  Your Honor, Adam Sencenbaugh with

14:29:45  13  Haynes and Boone on behalf a Cisco Systems, Inc.

14:29:48  14            MS. WOOD:  Your Honor, Stephanie Wood with Farney

14:29:51  15  Daniels for Innovative Wireless Solutions.

14:29:54  16            THE COURT:  All right.  Thank you.  I set these for

14:29:56  17  the same time because they looked fairly similar and looked

14:29:59  18  like they had the same issues.  And I'm willing to be dissuaded

14:30:03  19  from that, but I thought I would hear it all at one time.

14:30:07  20            Oh let me initially ask:  Are these cases similar

14:30:14  21  enough to where they should proceed with parallel scheduling

14:30:20  22  orders and be handled in the same manner, or are they totally

14:30:24  23  different?  And whoever wants to speak first can.

14:30:26  24            MR. YUNGWIRTH:  Your Honor, at this point in time we

14:30:38  25  are fine with proceeding on parallel scheduling orders.  When

| | | |
|---|---|---|
| 14:30:42 | 1 | it comes to trial, we may be in a situation where we're asking |
| 14:30:46 | 2 | for separate trials.  We currently have limited knowledge as to |
| 14:30:52 | 3 | the theory of infringement that will be pursued by the -- by |
| 14:30:57 | 4 | the defendant.  This is a declaratory judgment action, and they |
| 14:31:01 | 5 | reached out to some of our customers and we responded and are |
| 14:31:05 | 6 | seeking declaratory judgment of noninfringement and |
| 14:31:09 | 7 | invalidity.  Based on the allegations in their letters and how |
| 14:31:13 | 8 | we understand their allegations to be teed up, we believe that |
| 14:31:17 | 9 | there will be some substantial overlaps.  But as the case |
| 14:31:21 | 10 | evolves, that may prove to be incorrect. |
| 14:31:24 | 11 | THE COURT:  Counsel, let me hear from you. |
| 14:31:26 | 12 | MS. WOOD:  Thank, Your Honor.  Defendant agrees that |
| 14:31:28 | 13 | there will be substantial overlap and would actually prefer the |
| 14:31:32 | 14 | two cases be consolidated pretrial.  It's the same three |
| 14:31:35 | 15 | patents that are in suit and the same types of technology -- |
| 14:31:39 | 16 | wireless routers and wireless access points.  We think that it |
| 14:31:44 | 17 | would be more efficient if they were consolidated for pretrial. |
| 14:31:48 | 18 | THE COURT:  Well, I generally am of the persuasion |
| 14:31:51 | 19 | that it will always be more efficient because then we don't |
| 14:31:54 | 20 | face issues down the line about whether a certain deposition |
| 14:31:57 | 21 | that was taken should only be -- the statements should only be |
| 14:32:01 | 22 | admissible in one case or another case because it wasn't |
| 14:32:04 | 23 | specifically designated that it was in the other case and |
| 14:32:10 | 24 | things like that.  But you-all are aware of that because you're |
| 14:32:13 | 25 | patent lawyers.  So you know every little way to make it harder |

14:32:16 1 for the trial court than the normal lawyer does.

14:32:18 2       What my inclination would be is to -- because it

14:32:26 3 solves that problem, is to consolidate the cases, render one

14:32:33 4 scheduling order with the understanding that if the case does

14:32:37 5 not get resolved by dispositive motion or by settlement or both

14:32:43 6 of them don't get resolved, either party can file a motion for

14:32:48 7 separate trials and we can try them separately. I don't have a

14:32:53 8 problem with that. What clogs my docket is not trials; it's

14:32:57 9 pretrials. So does that work for you-all?

14:32:59 10       MR. YUNGWIRTH: That's fine with us, Your Honor.

14:33:01 11       MS. WOOD: That's defendant's preference. Thank you,

14:33:05 12 Your Honor.

14:33:05 13       THE COURT: All right. Now, that having been said,

14:33:17 14 are you-all aware of the way I handle patent cases, and have

14:33:18 15 you looked into -- I'm sure you've Googled me to death. You

14:33:20 16 know more about me than I do. Who wants to give me the ages of

14:33:24 17 my grandchildren first? One of you knows it.

14:33:27 18       Have you had an opportunity or taken an opportunity

14:33:30 19 to sit down and discuss deadlines and dates and what you need.

14:33:35 20       MR. YUNGWIRTH: Your Honor, we did, and I believe we

14:33:37 21 are familiar with your standard practices in patent cases. If

14:33:42 22 I'm correct about that, it would entail an early Markman

14:33:47 23 hearing and the other deadlines in the case being deferred

14:33:49 24 until after that. And I did discuss that with Ms. Wood, I

14:33:53 25 believe, last week.

| | | |
|---|---|---|
| 14:33:54 | 1 | THE COURT: Well, you're basically right. The |
| 14:33:56 | 2 | question of whether the Markman hearing is early depends on |
| 14:34:00 | 3 | when you tell me you can be ready for Markman hearing. I have |
| 14:34:04 | 4 | yet to see the case -- I've been doing this 10 years now -- |
| 14:34:08 | 5 | where I really thought that there was ever a need for any |
| 14:34:11 | 6 | discovery pre-Markman. But every lawyer that appears in front |
| 14:34:15 | 7 | of me tells me, Oh, no. We've got to do discovery pre-Markman. |
| 14:34:20 | 8 | So I always give you some reasonable time for discovery, and |
| 14:34:24 | 9 | then I have the Markman hearing. And even after the Markman |
| 14:34:27 | 10 | hearing, I can't figure out why any discovery was necessary for |
| 14:34:31 | 11 | the Markman hearing. |
| 14:34:32 | 12 | So let me give you the tip-off. And that is that, |
| 14:34:39 | 13 | even before the Federal Circuit wrote about it, I believed that |
| 14:34:43 | 14 | it would be the rare case where I needed anything outside of |
| 14:34:48 | 15 | the intrinsic record to make a determination on claims |
| 14:34:52 | 16 | construction. Nothing has changed my mind on that, but I'm |
| 14:34:57 | 17 | going to -- I will give you what opportunity and what time you |
| 14:35:04 | 18 | believe that you really need to put that together. |
| 14:35:10 | 19 | I generally always like to have a tutorial at some |
| 14:35:14 | 20 | point, but let me tell you about the tutorial. A tutorial in |
| 14:35:22 | 21 | my court is for you to explain to me how your science works and |
| 14:35:27 | 22 | what's at stake here. For instance -- and I haven't read any |
| 14:35:34 | 23 | of the technical things in this case -- let's say Ruckus builds |
| 14:35:41 | 24 | a device that does A, B, C, D, and E. Innovative Wireless |
| 14:35:46 | 25 | Services builds a device that Ruckus thinks is doing the same |

14:35:53 1 thing. I want to know what that process is, and I want to know

14:35:56 2 the difference in the devices without advocacy.

14:36:00 3 The reason I call it a tutorial is I don't want -- I

14:36:03 4 don't care who's right or wrong. I don't want you to argue

14:36:06 5 who's right or wrong. And I want as little advocacy as I can

14:36:12 6 get -- and y'all can be seated -- although there has to be some

14:36:16 7 overlap and you're going to have some disagreement. But I

14:36:19 8 don't want you to take the bait your opponent throws down and

14:36:23 9 think you've got to argue it at the tutorial. I want to

14:36:26 10 understand technically what's at stake here and what we're

14:36:32 11 doing.

14:36:32 12 What I want you to do in the tutorial is get me up to

14:36:35 13 a level in your science where I can understand what your

14:36:37 14 disagreement is. You know, you're claiming that a bunch of

14:36:42 15 little electrons go through one gate that does this, and that

14:36:46 16 is what your product does and she's infringing on it. She

14:36:50 17 says, No, no. The electrons go through the other gate, and

14:36:55 18 that makes a difference. That's what I want to know about.

14:36:57 19 The reason I take the time to tell you this right now

14:36:59 20 is, somehow, when I go to these patent seminars -- I think

14:37:02 21 there are a lot of judges around the country, if not all of

14:37:05 22 them, that like tutorials. Somehow, what has crept into the

14:37:09 23 vernacular at these seminars -- and it darn sure is true in

14:37:12 24 Austin, and I don't know where it came from -- is the phrase

14:37:15 25 "claims construction tutorial." That is not what it is in my

14:37:19 1 court. It is totally unrelated to claims construction. It is

14:37:23 2 totally unrelated to what terms mean. It has nothing to do

14:37:28 3 with your Markman hearing.

14:37:29 4 So I just want to make that clear to you-all so you

14:37:34 5 don't get off trying to think I'm doing something. A tutorial

14:37:36 6 is totally different. I like to have it before the Markman

14:37:40 7 hearing because I like to understand the science before I start

14:37:45 8 hearing you argue what terms should mean. But it doesn't have

14:37:50 9 to be that way. We can hold a tutorial tomorrow before you've

14:37:57 10 even thought about Markman very much.

14:37:58 11 So, one, get that out of your thinking. It is a

14:38:02 12 technical tutorial that is totally unrelated to Markman. It

14:38:06 13 just comes within the first part of the process in your case,

14:38:10 14 the pre-Markman time, because I like to learn the science

14:38:14 15 before I start trying to figure out who's right on what the

14:38:16 16 terms mean -- what the claims mean. So know that.

14:38:21 17 It can come close to Markman. Sometimes lawyers like

14:38:27 18 it to come close to Markman because if you're going to have

14:38:32 19 your inventor or expert in here, sometimes it's easier to have

14:38:36 20 that person in just before we have the Markman hearing. But

14:38:40 21 it's unrelated to Markman. So know that. Don't spend a lot of

14:38:43 22 time and don't spend a lot of your client's money on trying to

14:38:47 23 in some way link the tutorial to the Markman hearing, because

14:38:51 24 that's not what it's going to be.

14:38:55 25 Now, about the tutorial: It will be off the record.

14:38:59 1  There will not be a court reporter present.  We will do it in

14:39:03 2  the courtroom because there's usually a lot of people.  And, if

14:39:06 3  not, we have more room to spread out depending on what you want

14:39:09 4  to do.  I give you each the same amount of time because that's

14:39:15 5  fair.  But -- and the plaintiff goes first because that's just

14:39:20 6  the easy way to do it because it's above the "v."  But if it

14:39:25 7  works the way it should work, the defendant will not take as

14:39:29 8  much time as the plaintiff because we're not arguing.  We're

14:39:33 9  presenting a presentation on the science.  And so if you-all

14:39:36 10  are playing it straight, a whole lot of what the plaintiff puts

14:39:42 11  on is the same thing the defendant is going to tell me about

14:39:44 12  the science.  And I don't need to hear it twice.  But you'll

14:39:47 13  each have equal time just because you feel better about that.

14:39:51 14        You can put it on any way you want to.  You can have

14:39:55 15  an inventor explain it to me.  That's often very good.  You can

14:40:01 16  bring me -- to the extent your product is capable of being

14:40:07 17  something I can hold in my hand or see or something, that's

14:40:10 18  really helpful because what you're doing is educating me.

14:40:14 19        You can present it the way most lawyers like to do

14:40:17 20  it, which is the least effective way, and that is a lawyer can

14:40:21 21  present a PowerPoint on the science.  Believe me, your

14:40:26 22  inventors are better at this than you are no matter what you

14:40:29 23  think because we're off the record on it.  But if you want to

14:40:33 24  do it because you haven't finished your PowerPoint allotment

14:40:37 25  for the month yet, you're welcome to do it that way.  But I

14:40:40 1 don't find it particularly useful to me. What I'm trying to do

14:40:44 2 is learn about what you're doing, and that's what I want to

14:40:48 3 see. And you can do it any way you want to.

14:40:50 4 And, again, it's not going to be on the record.

14:40:52 5 Nothing anybody says during the Tutorial hearing can be brought

14:40:55 6 up at any other phase to say, well, they said this at the

14:40:58 7 Tutorial hearing. It is a non-advocacy deal. It is just

14:41:02 8 letting me know what your science is.

14:41:04 9 At the -- at the claims construction hearing, I don't

14:41:13 10 have a fixed way I do claims construction. I want you to argue

14:41:18 11 every claim you have. I don't want you to have a number of

14:41:23 12 claims and say, well, at the hearing we're going to argue five

14:41:29 13 of the 23 claims and let you deal with the rest of them out of

14:41:33 14 our briefing. No. I don't want to do that. If it's important

14:41:36 15 enough that it's a disputed claim term, you've got to get

14:41:40 16 prepared and you've got to tell me why you're right on it. So

14:41:43 17 know that.

14:41:44 18 I urge you to get together and pare down your claims

14:41:54 19 for a lot of reasons. Number one, time is precious in federal

14:41:58 20 courts, and it's getting more precious. I have not yet come up

14:42:02 21 with a rule to tell you you can't have more than X claims or Y

14:42:07 22 claims. I do that for a lot of reasons. Number one, I've

14:42:12 23 generally gotten enough cooperation out of the lawyers to where

14:42:15 24 you pare it down to something you know you're going to argue

14:42:19 25 anyway, the important ones. But, secondly, no matter how mad

14:42:22 1 it makes me -- and I realize the Circuit has gotten a little

14:42:26 2 bit flexible on this -- you do have the right to have the terms

14:42:31 3 that you think are in dispute construed by the Court, no matter

14:42:37 4 how many of them there are. I would hope that you would

14:42:41 5 automatically eliminate the ones that are not outcome

14:42:46 6 determinative. But work together and come up with as few

14:42:49 7 claims as you can that you think will absolutely have an effect

14:42:53 8 on the case.

14:42:54 9 Because I can pick out which ones that you're not

14:42:57 10 really serious about that you want to have hide in the record

14:43:01 11 until you get to the Federal Circuit after you've lost down

14:43:04 12 here and you start combing through the record and say, Aha.

14:43:09 13 Here's claim 26. The court got that wrong, and that suddenly

14:43:13 14 becomes the primary issue at the Federal Circuit. I can assure

14:43:17 15 you the Federal Circuit is also aware of that. So it's better

14:43:20 16 if you don't do it.

14:43:22 17 But what I do is we will set a schedule up through

14:43:31 18 claims construction. And how quickly we get to claims

14:43:34 19 construction depends on what you as lawyers tell me you need in

14:43:39 20 the way of time to get there. I don't set an arbitrary date

14:43:43 21 out there. This is your case. It's your clients' case. It's

14:43:46 22 not my case. I'm here every day, and I can either be working

14:43:49 23 on your case or I can be working on somebody else's case.

14:43:53 24 So with that in mind, have you-all yet had an

14:43:59 25 opportunity to discuss any dates or work along toward that

14:44:03 1  goal?

14:44:04 2          MR. YUNGWIRTH:  Your Honor, we didn't discuss

14:44:06 3  specific dates, but I'm happy later this week or by the

14:44:10 4  beginning of next week to submit something to the Court, if

14:44:13 5  you'd like us to do so, with a proposed schedule leading up to

14:44:17 6  the Markman hearing itself.

14:44:18 7          THE COURT:  Well, here's what happens -- and y'all

14:44:20 8  can be seated again -- once I sign the schedule, I will lift

14:44:26 9  the stay I've imposed on you.  And I'll lift the stay only to

14:44:32 10 satisfy the matters that are on the scheduling order.  What

14:44:38 11 that means is I want to get Markman out of the way before you

14:44:42 12 do general discovery.  I realize that's a problem.  It costs

14:44:48 13 you your trips right away.  You know, you might not be able to

14:44:51 14 work in the depositions in Hong Kong over the Chinese New Year

14:44:55 15 if we're not going to have the Markman hearing until March or

14:44:59 16 something like that.

14:45:01 17         But all judges I think get tired of hearing how

14:45:05 18 expensive patent cases are.  And I say again, it's not the

14:45:09 19 trial that's expensive.  It's the lead up to the trial that's

14:45:13 20 expensive.  A lot of cases do settle after a claims

14:45:16 21 construction order is rendered.  So that's why I like to do

14:45:20 22 everything up to claims construction.  And then what happens

14:45:23 23 after you've had your claims construction hearing, whenever we

14:45:27 24 can get it done, you will get your Markman order.  And the last

14:45:34 25 part of that Markman order will set a new scheduling conference

14:45:38 1 for roughly 45 days after the date of that order and instruct

14:45:41 2 you to use that 45 days to, one, see if you can settle the case

14:45:45 3 now that you know the way the terms are going to be construed

14:45:49 4 or, two, if you can't, to work out a schedule for what you need

14:45:52 5 to do then from that point forward through trial, which is your

14:45:57 6 general discovery and what you do.

14:46:00 7        So you're -- nobody needs to panic.  You're in-house

14:46:03 8 counsel doesn't need to panic.  Your clients don't need to

14:46:07 9 panic.  You're going to get ample time to do everything you

14:46:10 10 want to do.  You're just not going to get it before claims

14:46:13 11 construction.

14:46:14 12        Now, have you-all had an opportunity to review what

14:46:17 13 my kind of outline is on the kind of things I want to see in

14:46:22 14 the scheduling order?

14:46:23 15        MS. WOOD:  Defendant has, Your Honor.

14:46:25 16        THE COURT:  All right.  Well, here.  Let me give --

14:46:28 17 do we have some more copies of this?  All right.  Make a copy

14:46:32 18 for each of them of this.

14:46:34 19        And we're not going to go over it and fill in dates

14:46:37 20 today.  You don't have to do it until when you have your

14:46:43 21 calendar in front of you.  But basically there's going to be a

14:46:45 22 date for disclosure of claims and infringement contentions, a

14:46:49 23 date for disclosure of invalidity contentions, a date to

14:46:53 24 identify claim terms to be construed.  Then I want a joint

14:46:56 25 claims construction statement that is in the traditional way of

| | |
|---|---|
| 14:47:03 | 1 | the term to be construed, what the plaintiff wants and what the |
| 14:47:06 | 2 | defendant wants so I can just look at them side by side, and |
| 14:47:09 | 3 | it's helpful to me, with citations to the intrinsic record as |
| 14:47:14 | 4 | to why you get it that way. |
| 14:47:16 | 5 | If the inventor uses "cat" 37 times to mean the small |
| 14:47:20 | 6 | feline animal and one side says "cat" really means "dog," then |
| 14:47:25 | 7 | I want to know where in the patent do I see the inventor using |
| 14:47:28 | 8 | it this way and why the other side, says, No, no. It really |
| 14:47:32 | 9 | means something else. |
| 14:47:38 | 10 | We'll set a date when your claims construction |
| 14:47:41 | 11 | discovery closes and then time for an opening brief and a time |
| 14:47:45 | 12 | for reply brief. That will be -- you may be seated. There |
| 14:47:52 | 13 | won't be any plaintiff files a brief, defendant responds, |
| 14:47:58 | 14 | plaintiff replies, because nobody has the burden of proof in |
| 14:48:01 | 15 | claims construction -- or the burden of persuasion. You both |
| 14:48:07 | 16 | do. We're just looking at terms. So I want both claims -- |
| 14:48:12 | 17 | plaintiff and defendant's opening briefs the same time and |
| 14:48:15 | 18 | their replies the same time. |
| 14:48:17 | 19 | Now, what you won't -- you can make suggestions as to |
| 14:48:26 | 20 | when you want your tutorial and when you want your Markman |
| 14:48:30 | 21 | hearing, but I'm going to have to -- those are the two things |
| 14:48:35 | 22 | I've got to fit into my calendar. How long do you really think |
| 14:48:40 | 23 | it will take to get this case ready for a Markman hearing? |
| 14:48:43 | 24 | Because maybe what we can do today is set your end dates and |
| 14:48:48 | 25 | then you can work out your schedule inside that. And knowing |

| | | |
|---|---|---|
| 14:48:56 | 1 | that time goes by and if one of you wants something to happen |
| 14:49:00 | 2 | one month and one of you wants it to happen in another month, |
| 14:49:03 | 3 | we're just going to work it out because a month at the |
| 14:49:05 | 4 | beginning of a case means nothing. |
| 14:49:06 | 5 | So how much time do you-all realistically think it |
| 14:49:10 | 6 | will take you to get this case ready to have a claims |
| 14:49:13 | 7 | construction hearing on it? |
| 14:49:15 | 8 | MR. YUNGWIRTH: Your Honor, I think we could get it |
| 14:49:16 | 9 | done within six months or so. The only caveat that I have with |
| 14:49:20 | 10 | six months is that that would put us in the middle of February, |
| 14:49:23 | 11 | and I have a two-week trial in front of Judge Davis -- I'm |
| 14:49:27 | 12 | sorry -- a one-week trial in front of Judge Davis the second |
| 14:49:30 | 13 | week of February. So possibly, you know, six and a half |
| 14:49:33 | 14 | months, if that fits within Your Honor's schedule and works for |
| 14:49:39 | 15 | the defendant. |
| 14:49:39 | 16 | MS. WOOD: And we looked at your prior scheduling |
| 14:49:42 | 17 | orders as well and looked at on average it was about six |
| 14:49:45 | 18 | months. So based upon that, I looked at our schedule |
| 14:49:48 | 19 | internally. That works for Defendant as well. |
| 14:49:51 | 20 | THE COURT: Well, let me tell you about that. I'm |
| 14:49:53 | 21 | pleased you did that, but there's danger in that because of |
| 14:49:56 | 22 | what I told you at the beginning. You can't really compare |
| 14:49:59 | 23 | your case to any other scheduling order and think that's what I |
| 14:50:02 | 24 | want. The reason -- and it's just, I assure you, pure |
| 14:50:08 | 25 | happenstance that comes out to about six months because it's -- |

| 14:50:12 | 1 | I set those dates based on what the lawyers tell me is a |
| 14:50:17 | 2 | reasonable period of time plus what their schedule looked |
| 14:50:20 | 3 | like.  It's hard to believe, but I do recognize you probably |
| 14:50:24 | 4 | have more than one case. |
| 14:50:25 | 5 | So it's not what I want.  What I want is a date I'm |
| 14:50:29 | 6 | not going to have to put off because that's what creates |
| 14:50:36 | 7 | trouble for me.  I don't want to see a continuance on this.  I |
| 14:50:38 | 8 | want to decide and you-all know that if we're going to have a |
| 14:50:42 | 9 | Markman hearing on this date, that is the date.  So what is |
| 14:50:45 | 10 | your suggestion?  If not February, when? |
| 14:50:49 | 11 | MR. YUNGWIRTH:  My suggestion would be the last week |
| 14:50:51 | 12 | of February or the first week of March or the second week of |
| 14:50:55 | 13 | March.  Whatever works for Your Honor and opposing counsel. |
| 14:50:58 | 14 | MS. WOOD:  The last week of February and the first |
| 14:51:00 | 15 | week of March for the defendant. |
| 14:51:02 | 16 | THE COURT:  Do you-all have any possible idea of how |
| 14:51:15 | 17 | many claims are going to be at play here and how much time |
| 14:51:21 | 18 | you're going to need for a Markman hearing? |
| 14:51:23 | 19 | MR. YUNGWIRTH:  I know there was, I believe, only one |
| 14:51:26 | 20 | claim for each patent that identified in the correspondence |
| 14:51:29 | 21 | from Innovative.  But I'm not sure if you have a better idea as |
| 14:51:32 | 22 | to ... |
| 14:51:32 | 23 | MS. WOOD:  So there will be more than one claim from |
| 14:51:35 | 24 | each patent that's asserted, but the patents, all three, have a |
| 14:51:38 | 25 | common specification or a relatively common specification.  So |

14:51:41  1  because of that, it shouldn't be overly complicated.

14:51:44  2  THE COURT:  So we can have a half-day Markman

14:51:47  3  hearing?

14:51:48  4  MR. YUNGWIRTH:  Yeah.  I think that would be fine.

14:51:50  5  MS. WOOD:  That works for Defendant.

14:51:51  6  THE COURT:  All right.  Is it complex, or can we also

14:51:54  7  think about a half day for a tutorial?

14:51:58  8  MR. YUNGWIRTH:  I think a half day would be fine for

14:52:00  9  a tutorial as well.

14:52:01  10  THE COURT:  And that means you can take less than

14:52:03  11  that or, you know, if we had to, we could run over a little

14:52:06  12  bit.  It's just easier for me to think in terms about whether

14:52:09  13  I'm going to knock out a morning for you or an afternoon for

14:52:12  14  you or a day for you than it is to -- to tie you down.

14:52:15  15  It sounds like each of these things can be done in a

14:52:18  16  half day.  Here is the problem with late February:  I am likely

14:52:27  17  to go to trial in another patent case on Tuesday, February

14:52:30  18  the 18, that could take two weeks or could take three weeks.

14:52:36  19  So we'll look at March just to be safe.

14:52:41  20  As you know, that case could settle, too.  But until

14:52:45  21  it settles, it's not settled, and I have it on my docket.  And

14:52:49  22  as soon as I say, We'll go ahead and schedule you in here

14:52:52  23  because it's likely to settle, you'll get all your people

14:52:56  24  cranked up and you'll get ready and then it won't settle.  So

14:52:59  25  it's just easier if we look later.  Do y'all have a reasonable

14:53:07 1 feel for what your schedule looks like right now?

14:53:10 2          MR. YUNGWIRTH:  I had turned off my phone, and I'm

14:53:12 3 trying to get it to boot back up so it will show me my

14:53:17 4 calendar.  But I think that I'm relatively open in early March,

14:53:21 5 Your Honor.

14:53:21 6          MS. WOOD:  I know that we have a conflict March the

14:53:23 7 17th, which is actually also St. Patrick's day, but unrelated.

14:53:28 8 But the first or second week of March would work for defendant.

14:53:31 9          THE COURT:  Well, my problem is, is if this case

14:53:33 10 takes the three weeks instead of the two weeks, I run through

14:53:39 11 the week of the 3rd of March.  Now, what I could do -- well,

14:53:53 12 let's talk about this.  We can do something the week of the

14:54:00 13 24th of March.  Bear in mind I want to have a tutorial

14:54:09 14 somewhere.  We could do -- if we needed to, we could do the

14:54:13 15 tutorial before February the 18th.  That's when my other trial

14:54:17 16 starts.  Or if you wanted to, we could do it close to Markman

14:54:22 17 just as long as you take me at my word and don't think, because

14:54:25 18 they come to close one another, that I think the tutorial has

14:54:28 19 anything to do with the Markman hearing.  Because I don't.

14:54:31 20          And so I think I could safely have a Markman hearing

14:54:41 21 the 10th or the 11th or the 24th, 25th, or 26th.  What's your

14:54:50 22 pleasure?

14:54:53 23          MR. YUNGWIRTH:  Your Honor, I think we would prefer,

14:54:56 24 if it works for Your Honor, to have the tutorial, for example,

14:54:59 25 the day before the Markman so that it would just require one

14:55:03 1 trip here. And I promise we'll keep it to technology and not

14:55:06 2 to claims construction. And doing it the 25th and the 26th,

14:55:12 3 half a day on the 25th and a half day on the 26th, is fine with

14:55:16 4 us.

14:55:16 5          MS. WOOD: That's fine with Defendants as well.

14:55:18 6          THE COURT: All right. You've got -- if you have

14:55:21 7 witnesses coming in from out of town, as most patent cases do

14:55:25 8 or other people coming in from out of town or you coming in

14:55:29 9 from out of town, would you prefer on the 25th the morning or

14:55:32 10 the afternoon?

14:55:35 11          MR. YUNGWIRTH: We're open, Your Honor.

14:55:37 12          THE COURT: That's a Tuesday.

14:55:38 13          MR. YUNGWIRTH: What ever works best for you.

14:55:40 14          THE COURT: Well, it doesn't matter to me.

14:55:41 15          MR. YUNGWIRTH: Maybe do the morning of the 25th and

14:55:44 16 the morning of the 26th?

14:55:45 17          THE COURT: All right. Then here's what you should

14:55:51 18 think about for purposes of your scheduling order. I'm going

14:55:53 19 to set the tutorial for 9 o'clock on March the 25th, which is a

14:56:01 20 Tuesday, and the Markman for 9 o'clock on March 26th, which is

14:56:05 21 a Wednesday. So working with those dates, then you ought to be

14:56:13 22 able to back that up on the other things that I want.

14:56:19 23          Now, that doesn't mean that you can't -- that y'all

14:56:24 24 can't agree on other things that you want to do by certain

14:56:29 25 dates. Don't -- everything I do in my Court is a work in

| | | |
|---|---|---|
| 14:56:33 | 1 | progress. It's not cast in stone. So this is just a guide. |
| 14:56:36 | 2 | You've got to have a default somewhere, and so this is my |
| 14:56:39 | 3 | guide. So when you look down that list, these are things I |
| 14:56:42 | 4 | want to see by certain dates. But if you-all, for instance, |
| 14:56:47 | 5 | were to agree that you wanted to do subsets of these or |
| 14:56:51 | 6 | something else by certain dates, let me know. Put it in what |
| 14:56:55 | 7 | your proposal to me is, because once I sign the scheduling |
| 14:56:59 | 8 | order, it's going to be hard for you, if not impossible, to |
| 14:57:03 | 9 | change it because that's -- that's where we're going to go with |
| 14:57:07 | 10 | it. |
| 14:57:07 | 11 | Now, I would like, though, if we're going to have the |
| 14:57:12 | 12 | Markman hearing on March 26th, I want the last date anything is |
| 14:57:20 | 13 | filed, which would be your reply claims construction briefs, no |
| 14:57:26 | 14 | later than March the 12th. That gives me two weeks when I have |
| 14:57:29 | 15 | everything in front of me that's going to be filed or discussed |
| 14:57:35 | 16 | at the tutorial to be able to look at it and go over it. But |
| 14:57:40 | 17 | other than that, you can work out anything else you want to |
| 14:57:44 | 18 | work out with the dates. Make it realistic. |
| 14:57:48 | 19 | You'll find in my Court -- you've already done it -- |
| 14:57:51 | 20 | but I expect you at all times to demean yourselves like the |
| 14:57:56 | 21 | professionals you are and make reasonable accommodations to one |
| 14:58:01 | 22 | another. And so I expect all of these other dates to be agreed |
| 14:58:07 | 23 | upon. I don't expect to get something back from you -- and I |
| 14:58:10 | 24 | particularly don't want to get something back that says: The |
| 14:58:13 | 25 | plaintiff wants the claims construction statement due on |

```
14:58:18   1   February 1st and the defendant wants it due on January the
14:58:21   2   28th.  Don't bring me little ticky-tacky three day or one day
14:58:27   3   or one week or something like that.  Just work it out.  Make
14:58:30   4   the accommodations.
14:58:31   5           How long do you think it will take you to sit down
14:58:34   6   and do that?  When can I expect your information so I can craft
14:58:40   7   a scheduling order?
14:58:41   8           MS. WOOD:  Your Honor, I'm actually out next week.
14:58:45   9   So if we could make it not next week but the following week to
14:58:49  10   submit it, I would be abundantly grateful.
14:58:53  11           MR. YUNGWIRTH:  That's fine.
14:58:54  12           THE COURT:  All right.  Then you could get me
14:58:59  13   something by -- this would be a good day on a patent case --
14:59:02  14   Friday the 13th, in other words; is that right?
14:59:07  15           MR. YUNGWIRTH:  That would be fine, Your Honor.
14:59:09  16           THE COURT:  Because next week is the week of the
14:59:11  17   2nd.  The next week is the week of the 9th.
14:59:14  18           MS. WOOD:  Yeah.  Friday the 13th is fine,
14:59:16  19   Your Honor.
14:59:17  20           THE COURT:  All right.  Then get to us by Friday the
14:59:22  21   13th the dates that you will agree upon to get all of this done
14:59:28  22   with a claims construction brief deadline or no later than
14:59:32  23   March 12th.  You can back it up if you want to, but I want
14:59:36  24   everything in by March the 12th.  We'll do the tutorial March
14:59:40  25   the 25th at 9:00 and the Markman March the 26th at 9:00.
```

14:59:47 1    Now, you can presume at this point, because I'm

14:59:49 2  orally telling you this, that those dates are going to happen.

15:00:05 3  And so, therefore, your stay is lifted to the extent you may go

15:00:08 4  ahead and proceed if you need to exchange things or anything

15:00:12 5  you need to do before I actually sign a scheduling order to

15:00:17 6  proceed on a scheduling order such as we described.  You don't

15:00:21 7  have to sit on the formality of waiting until the end of

15:00:25 8  September because I haven't formally lifted the stay to let you

15:00:28 9  proceed forward with your pre-Markman scheduling order if

15:00:32 10 you-all want to have discussions and talk about it.  We'll go

15:00:35 11 ahead and get this to you before the order is entered.

15:00:38 12    What I want you to do is recognize that you only have

15:00:41 13 one job in this case, and that's to resolve it.  And you can

15:00:45 14 resolve it because you settle it, you can resolve it because I

15:00:49 15 grant a well-taken dispositive motion, or you can resolve it by

15:00:52 16 trial.  And I don't care which it is.  I'm not going to try to

15:00:57 17 talk you out of your trial.  Okay?  I look to try cases.  I'd

15:01:01 18 rather try cases than do anything else.

15:01:04 19    If I had my way, we wouldn't go through any of the

15:01:06 20 things on the scheduling order.  We'd just set you for trial,

15:01:10 21 and you'd get it ready, and we'd go to trial.  So know that.

15:01:12 22 Your job is to get the case resolved, so start doing whatever

15:01:15 23 you need to do to get it resolved and don't wait on the

15:01:20 24 formality of the order.

15:01:20 25    Now, of course, you know, if somebody wants to get

15:01:23  1  real picky, that means I'm not going to grant any motion for

15:01:27  2  sanctions until I get the order entered because you claim, as

15:01:30  3  you walked out the courtroom, somebody said they'd have

15:01:33  4  something done by next week and you didn't get it done.  But

15:01:36  5  know that.  Start working on this right now and get us your

15:01:40  6  other proposed dates by September the 13th.  You can count on

15:01:43  7  those dates.  If they do what I want them to do as I've said

15:01:48  8  with the dates we've talked about here, then you're going to

15:01:52  9  get the dates you want.  I'm not going to re-trade your deal.

15:01:56  10  And as soon as I get it, I will fold it into a scheduling order

15:02:00  11  that will have those dates and lift the stay in order for you

15:02:05  12  to proceed with Markman.

15:02:06  13          Now, the other reason to get you-all in here at the

15:02:10  14  kind of early stage of the case is to determine whether you

15:02:17  15  have any questions of me, anything you didn't find out when you

15:02:24  16  Googled me, anything about my staff, anything about the way we

15:02:27  17  do things, anything at all you might want to know that will

15:02:31  18  help you, because it's your case, as we go forward to make it

15:02:35  19  as easy on you as we can make it.

15:02:38  20          MR. YUNGWIRTH:  No questions from Plaintiff,

15:02:40  21  Your Honor.  We appreciate everything you did.

15:02:42  22          MS. WOOD:  No questions from Defendants either.

15:02:44  23          THE COURT:  All right.  If you -- if you come up with

15:02:46  24  questions, you haven't waived your right to ask them.  So if

15:02:52  25  there's nothing else, what we're going to do is this, and I'll

15:02:56  1  probably just fold this all into one order when we get your

15:02:58  2  dates.  I'm going to consolidate the two cases, so everything

15:03:01  3  you do is fair game in either of the two case.  We'll see where

15:03:06  4  we get after we get through Markman.  If the case is not

15:03:09  5  settled, we'll see where we get after we go through more

15:03:13  6  discovery and see where we get close to trial.

15:03:15  7          But at any time, if it looks like one or both of

15:03:21  8  these cases are going to be tried, either of you can file a

15:03:24  9  motion for separate trials if you think that it's necessary.

15:03:26  10  And I will tell you I will look favorably on it.  I'm not going

15:03:30  11  to put you to trial on it on both of them.  So there you go.

15:03:34  12          If nothing else, it was good meeting you and having

15:03:37  13  you in here, and I look forward to working with you in this

15:03:40  14  case.

15:03:40  15      (End of transcript)

16

17

18

19

20

21

22

23

24

25

1  **UNITED STATES DISTRICT COURT      )**

2  **WESTERN DISTRICT OF TEXAS           )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States

10      WITNESS MY OFFICIAL HAND this the 22nd day of

11 October 2013.

12

13                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
14                              Expiration Date:  12/31/2014
                                Official Court Reporter
15                              United States District Court
                                Austin Division
16                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
17                              (512) 391-8791

18

19

20

21

22

23

24

25